## BROWN v. PECHMAN.

1. APPEAL—INTERLOCUTORY ORDER.—Upon appeal from final judgment, an interlocutory order affecting the merits may be reviewed, even where there was no notice of intention to appeal from such order, especially when the judgment is based on such order.

2. IBID.—An appeal does not lie from a verbal statement of a Judge affecting the merits made while passing upon the mode of trial and continuance.

3. EVIDENCE—RES JUDICATA.—The question of admissibility of an agreed statement of facts held not to have been passed upon by a former Circuit Judge, in ruling as to the mode of trial and continuance.

4. WRITTEN AGREEMENTS — ADMITTED FACTS — JURIES AND JURY TRIALS—PRACTICE—ATTORNEYS—BURDEN OF PROOF.—Where the parties enter into a formal agreement in writing stipulating for the admission of certain facts, or waiving their right to a particular mode of trial, such agreement is binding upon the parties until the case is finally disposed of, unless such agreement is abrogated by the written consent of both parties, or one of the parties has been relieved from its operation by an order of the Court; and the burden of proof that the agreement is intended to apply only to the first trial is upon the party so asserting.

Before BENET, J., Barnwell, March, 1899. Reversed.

Action by Elizabeth A. Brown against Charles F. Pechman. From order of nonsuit, plaintiff appeals on the following exceptions:

1. That his Honor, Judge Benet, erred in finding that the question as to the admissibility of the written agreement of counsel in evidence had been passed upon and decided by his Honor, Judge Aldrich, in the absence of any record or testimony to show such fact, and in view of the conflicting statements of counsel to this fact.

2. That his Honor, Judge Benet, erred in concluding that the question as to the admissibility of the written agreement of counsel in evidence was *res judicata,* having been passed on by Judge Aldrich when he announced his oral decision as to the mode of trial, the question as to the waiver of jury trial under the agreement being submitted to him.

3. That his Honor, Judge Benet, erred in holding that in determining the mode of trial under the written agreement of counsel, Judge Aldrich must have passed upon the whole of said agreement, and that when Judge Aldrich refused the claim of plaintiff, to have a trial without jury, the whole stipulation went with that, and that the agreed statement of facts could not be submitted at a subsequent term of the Court, as evidence in the cause; whereas, the questions as to the mode of trial under said agreement, and its admissibility as evidence, were separate and distinct.

4. That the signature to said agreement being admitted, his Honor, Judge Benet, erred in holding it inadmissible in evidence against the defendant; it being the defendant's solemn admission in writing of the facts stated, and not limited in its terms to use in any particular term or trial.

5. That his Honor, Judge Benet, erred in holding that the defendant was not bound at this trial by his written agreement as to admission of facts, said agreement not being limited in respect to time, or confined in terms to some particular purpose or occasion, and neither of the parties having

been relieved from its operation by the Court on any equitable grounds.

6. That his honor, Judge Benet, erred in holding that Judge Aldrich, in passing upon the question as to mode of trial submitted to him, decided the question of the admissibility of the written agreement between counsel in evidence, before it was offered in evidence, and a trial of the case began; and in holding that the expressions of his Honor, Judge Aldrich's, opinion in reference to this agreement, when passing on the mode of trial, are to be considered as deciding its admissibility in evidence.

7. That his Honor, Judge Aldrich, erred in holding that the written agreement of counsel, although unlimited to any particular time or occasion, waiving jury trial, and consenting to trial by the Court, only bound defendant at the first trial had in the cause, and that the defendant is now entitled to trial by jury.

*Messrs. Bellinger, Townsend & O'Bannon,* for appellant, cite: *Interlocutory order may be reviewed on appeal from final judgment:* 36 S. C., 559; 17 S. C., 150; Code, 11. *Conduct of case as to mode of trial is entirely within the control of the attorneys:* 29 N. Y., Sup., 692; 6 S. C., 29. *Agreement is not limited as to time:* 103 U. S., 40; 43 N. E. R., 416; 46 N. E. R., 324. *Admissibility of agreement was not involved in Judge Aldrich's ruling, and hence it is not res judicata:* 27 S. E. R., 481; 30 S. C., 564.

*Messrs. Patterson & Holman* and *Robert Aldrich,* contra, cite: *Former stipulations do not apply on trial de novo:* 44 S. C., 309.

July 20, 1899. The opinion of the Court was delivered by

MR. CHIEF JUSTICE McIVER. This is the third appeal in this case—the first being reported in 49 S. C., 546, and the second in 53 S. C., 1, to which reference may be had for a

full history of the case. It will, therefore, be sufficient now to state the proceedings at the last trial, when the judgment was rendered from which this appeal is taken. After the issues presented by the pleadings had been framed, the attorneys for the parties, respectively, on the 26th of February, 1897, entered into a formal agreement, in writing, in the following language: "It is hereby stipulated and agreed that the following facts are and shall be admitted by both parties for the purposes of and on the trial of this action. That the plaintiff, Elizabeth A. Brown, inherited from her brother a tract of land known as Kilkenny, situate in said county and State, containing 600 acres, more or less, of which the land described in the complaint is part, prior to the year 1860, and during her coverture with her late husband,. James C. Brown, and thereupon became seized in fee in said land, subject to the marital rights of her said husband. That afterwards, on June 5th, 1869, during her said coverture with the said James C. Brown, the plaintiff united with him in executing to Pinckney Brown, their son, a deed purporting to convey said tract of land to him in fee, and signed what purported to be a release of her estate of inheritance in said land, indorsed on June 23d, 1869, upon said deed, before J. W. Freeman, magistrate; the said deed bearing date June 5th, 1869, and recorded in R. M. C. office for Barnwell County, in book 2 U, at page 447; and it is agreed that the original deed, if found by the time of the trial of this cause, shall be introduced in evidence; and if it cannot be found, that a certified copy thereof, from the office of the said register of mesne conveyances, may be introduced in evidence. That subsequently to the execution of the last mentioned deed said Pinckney Brown executed to Charles Pechman, sr., a deed dated January 27th, 1873, conveying him whatever interest he took under the said deed of June 5th, 1869; and that the said Pechman died in 1894, leaving in force a will by which he devised all his estate and interest in said land to his children; and upon a partition made among them in the year 1895, the land described in the complaint was assigned to the

defendant, Chas. F. Pechman, to whom the other devisees of Charles Pechman conveyed their interest, and said defendant is now in possession of said land. That the said James C. Brown, husband of the plaintiff, died on the 27th November, 1896. It is further agreed, that trial by jury be waived, and all the issues of law and fact be submitted to the Court for trial." When the case was sent back for a new trial by the judgment of this Court reversing the judgment of his Honor, Judge Townsend, the case came before his Honor, Judge Ernest Gary, on a motion submitted by defendant for leave to amend his answer by setting up certain equitable defenses. This motion was refused by Judge Gary upon the ground that, *under the admitted statement of facts,* the proposed defense could not avail the defendant. Upon appeal the action of Judge Gary was affirmed by this Court. When the case went back for a new trial, it came before his Honor, Judge Aldrich. What then occurred appears from the following statement, copied from the "Case," as prepared for the present appeal: "The plaintiff's attorneys announced that they relied upon the agreement above set out, and were ready to try the case without a jury before the Court on this agreement. The matter was orally discussed by counsel for both parties before the Judge, who orally announced that, in his opinion, the case would have to be tried *de novo* before a jury, without reference to the agreement; but that if the plaintiff was not ready to proceed to the trial in that way, he would continue the case upon their motion. The counsel for plaintiff announced that they were not ready to try the case before the jury, as they had relied entirely upon this agreement in writing between the counsel, and asked that the case be continued. No jury was empanelled in the case, and the case was marked by the Judge continued by plaintiff, no other order was made on the record." The case was again called for trial before his Honor, Judge Benet, at March term, 1899, when the counsel for plaintiff again insisted on a trial by the Court under the agreement; when Judge Benet ruled, "That though there was no record

of such ruling by Judge Aldrich as to the mode of trial, still, as it was admitted by counsel to have been made when the matter was before him, the parties were bound by his decision, and the case must be tried by the jury." The jury was then empanelled, and counsel for plaintiff offered in evidence the agreed statement of facts in writing above set out. Defendant's counsel objected upon the ground "that the plaintiff was precluded by Judge Aldrich's ruling from using this agreement." Whereupon it appeared in response to an inquiry from the Court, "Did Judge Aldrich, in his oral decision, include the right to use this statement of facts?" That there was a dispute between counsel as to this matter; but after further argument, Judge Benet ruled as follows: "The matter is not free from difficulty, but it must be decided; has already been decided, as matter of fact. In the absence of any formal record, or decretal order of record, by his Honor, Judge Aldrich, as to the question whether or not it should be tried by a jury, decided by Judge Aldrich last fall, and from which there was no appeal, there is a dispute between counsel as to whether the rest of the agreed statement or stipulation was passed upon by Judge Aldrich. I am not disposed to pass upon the recollection of the counsel as to whether or not Judge Aldrich settled the matter, and this leaves it for me to settle, irrespective of these recollections. It seems to me that Judge Aldrich, if the matter was mentioned to him at all, that there was an agreed statement of facts, must have passed upon the whole; and I must hold that when Judge Aldrich refused the claim of plaintiff to have a trial without a jury, that the whole stipulation went with that, and that the agreed statement of facts could not be submitted at this term of the Court as evidence without witnesses." He, therefore, sustained the objection to the admissibility of the agreed statement of facts as evidence. The plaintiff's counsel then offered in evidence the original deed from James Brown and Elizabeth Brown to Pinckney Brown, mentioned in the agreed statement of facts, to which objection was made on the same ground, and the objection

was sustained. The plaintiff's testimony being thus ruled out, a motion for nonsuit was made and granted, and judgment having been entered thereon, the plaintiff gave notice of her intention to appeal from said judgment; "and on the hearing, to ask the Supreme Court to review the intermediate orders necessarily affecting the judgment, made by the Hon. James Aldrich, as presiding Judge, at the November, 1898, term of the Circuit Court, and of Judge Benet, made at the March, 1899, term of said Court," upon the exceptions set out in the record, a copy of which should be incorporated by the Reporter in his report of this case.

Before proceeding to consider the points made by the exceptions for the purpose of this appeal, it may not be amiss to consider a preliminary question, which, though not made formally, may possibly be regarded as pertinent to this case; and that is whether the ruling of Judge Aldrich can be reviewed under this appeal, though no formal appeal was taken from such ruling at the time it was made. This ruling of Judge Aldrich (if ruling it can be called) was manifestly interlocutory, and certainly affected the merits; and under the cases of *Capell* v. *Moses,* 36 S. C., especially the remarks made by Mr. Justice Pope at page 562, as well as the case of *McCrady* v. *Jones,* 36 S. C., at page 174, *et seq.,* to which he refers, clearly show that upon an appeal from a final judgment, this Court may review any interlocutory order affecting the merits, even though there should be no notice of appeal from such interlocutory order. Especially is this so in a case like this, where Judge Benet bases his ruling upon the ground that Judge Aldrich had, according to his view, practically decided the same question upon which he was called upon to rule. But aside from this we do not see how an appeal could have been taken from what is called the ruling of Judge Aldrich; for the only ruling which he really made was that the plaintiff was entitled to a continuance, and this was the only order which he made. The fact that, in his oral remarks, he intimated, or even stated definitely, that he *would*

36—55

*hold* that the defendant was entitled to a trial by jury, not-withstanding the fact that he had waived his right to that mode of trial by the agreed statement, entered into on the 26th day of February, 1897, a copy of which is set out above, certainly would not amount to a ruling from which an appeal could be taken.

Proceeding, then, to the merits, it seems to us that there was error on the part of his Honor, Judge Benet, in holding that the agreed statement of facts upon which the case was to be heard was no longer binding on the parties, and was consequently inadmissible in evidence, and, as a necessary consequence, there was error in ruling out the original deed from James C. Brown and wife, Elizabeth Brown, to Pinckney Brown. The Circuit Judge seems to have based his ruling solely upon the ground that the point had already been decided by his Honor, Judge Aldrich, for, so far as we can perceive, he did not consider the question apart from such supposed ruling. Even granting that Judge Aldrich had decided that the defendant was entitled to a trial by jury, notwithstanding the agreed statement in which the parties had, in express terms, waived their right to that mode of trial (although we do not think he made any such decision as would make the question *res judicata,* or from which an appeal could be taken), yet he certainly did not decide the question as to the admissibility of the testimony ruled out by Judge Benet. Indeed, he could not possibly have undertaken to decide any such question authoritatively; for in the proceeding before Judge Aldrich no jury was empanelled and no testimony was or could have been offered, and, therefore, no ruling as to the admissibility of testimony was or could have been made; and we do not understand that Judge Aldrich undertook to make any such ruling. All that he did do, judicially, was to grant the motion for a continuance, although he did, in his oral remarks, say that, "in his opinion, the case would have to be tried *de novo* before a jury, without reference to the agreement; but that if the plaintiff was not ready to proceed to the

trial in that way, he would continue the case upon their motion"—which motion was made and granted; and that was all that was done, judicially, in the case when it came before Judge Aldrich. It seems to us, therefore, that Judge Benet erred in assuming that he was in any way bound by what Judge Aldrich had said in his oral remarks, and in basing his action upon such erroneous assumption. When the case was called for trial before Judge Benet, and counsel for plaintiff insisted upon a trial by the Court, as provided for by the agreement, he should have decided that question, without regard to what had occurred when the case was called for trial before Judge Aldrich, and for reasons satisfactory to that Judge had been continued. For a like reason, when the testimony ruled out was offered, the question whether it was inadmissible should have been decided by Judge Benet as an original question, unincumbered by any oral remarks made by Judge Aldrich when the case came before him.

If, however, the rulings complained of were right, and the only error is in the reasons given for such rulings, the judgment appealed from might be sustained. It, therefore, becomes necessary to consider the question as an original question. This involves an inquiry into the force and effect of the agreement of 26th February, 1897, a copy of which is set out above. This inquiry may be narrowed down to the question whether such agreement was confined to the first trial of the case before Judge Townsend, or extended to any subsequent trial of the same case between the same parties. The rule upon this subject may be found in 1 Am. & Eng. Ency. of Law (2d edit.), at page 698, where, in speaking of the effect of the admissions of an attorney in a cause, it is said: "His admissions in common conversation are not to be received in evidence against his client. But his distinct and formal admissions or declarations, made for the purpose of dispensing with the proof of some fact, or to modify the severity of some rule of practice, are receivable. And such admission may be proved even on a subsequent

trial of the cause, if, from the language used at the time and the surrounding circumstances, they appear not to have been limited to the former trial." See, also, 9 Am. & Eng. Enc. of Law, 350 (1st edit.), where the same doctrine is laid down. In *Bamberger* v. *Terry,* 103 U. S., 40, the same principle was recognized and carried somewhat further than it is necessary to do in the case now before us. In that case there was a stipulation in writing, "that the cause be tried by the Court," which Waite, C. J., in delivering the opinion of the Court, said: "was equivalent to a waiver of a jury." At the trial of the case below, and at the close of the testimony, the plaintiff below asked and, against the objection of the defendant, obtained leave to amend his declaration, so as to avoid a variance between the pleadings and the proofs. The defendant then put in a general denial to the amended declaration, and demanded a jury trial. This the Court below refused, but gave defendant leave to introduce additional evidence if he desired. The Supreme Court held as follows: "When such an amendment is permitted, the Court must, in its discretion, determine whether any submission which has been made ought to be vacated. Here the Court decided that it ought not, and in this we see nothing wrong." Now, if after an amendment of the declaration (complaint), the parties must be held to any stipulation which they have previously entered into, unless the Court, *in its discretion,* should relieve them, or any of them, from its terms, surely, in a case like the present, where neither of the parties has even asked to be relieved from the terms of the stipulation which they have formally entered into, they must be held still bound by the waiver of their right to a trial by jury, and by their agreement to admit the facts stated in the agreement. The proceedings before Judge Aldrich certainly cannot be regarded as an application by defendant to the Court, in the exercise of its discretion, to be relieved from the terms of the agreement, for nothing of the kind appears to have been even intimated. On the contrary, it is manifest from what is said in the "Case," herein above reproduced, that the defendant

claimed, as a *matter of law,* that he was no longer bound by
such agreement, and what Judge Aldrich said, in his oral
remarks, clearly shows that he so regarded the position of
the defendant. To the same effect see our own case of *The
State* v. *Pacific Guano Co.,* 28 S. C., 63. That was a case,
like the present, of such a character as that the parties were
entitled to a trial by jury; but they having consented to a
trial by the Court, upon testimony taken and reported by a
referee, it was so tried. Upon appeal, a new trial was or-
dered, and when the case was called for trial, a controversy
arose between the parties as to the mode of trial. The Cir-
cuit Judge held that the case being one in which the right of
trial by jury was secured to both parties by the law, such a
mode of trial could not be dispensed with except by consent,
and that the previous waiver of such right and consent to
another mode of trial was not binding on the present trial;
and he, therefore, ordered that the case be placed upon Cal-
endar I for trial by jury, unless the parties consent to some
other mode of trial. Upon appeal from that order, this
Court held that while the Circuit Judge was correct in ruling
that the case was of such a character as that originally either
party have a right to demand a trial by jury; yet he erred in
holding that the previous waiver of such right and consent
to another mode of trial was no longer binding upon the par-
ties. The case of *Aultman* v. *Salinas,* 44 S. C., 300, cited by
counsel for respondent, so far from sustaining his conten-
tion, is a direct authority for the view which we have
adopted. It will be seen, by reference to that case, as re-
ported in 41 S. C., at page 306, that it is there stated that the
parties had agreed, in writing, that a jury trial be waived,
and when the Court, in hearing the appeal, as reported in 44
S. C., 300, came to consider the appellant's third exception,
imputing error to the Circuit Judge "in hearing the case over
the objections of the plaintiffs, it being a law case, and the
plaintiffs having a right to trial by jury," this Court held
that while it was true that the plaintiffs originally had a
right to a trial by jury, they likewise had a right to waive

their right to such a mode of trial, and having done so in writing, and never having asked leave to rescind such agreement, the exception was untenable.  Looking at the terms of the agreement of 26th February, 1897, we are unable to find even a single word that indicates any intention to limit its force and effect to the *first* trial of the case.   On the contrary, the language used in the very first sentence indicates that the intention of the parties was that the stipulations therein contained should apply to any trial of the case—"the following facts are, and *shall* be, admitted by both parties, *for the purpose of* and on the trial of this action."    It will be noted that this agreement was entered into shortly before the trial of the first case, and the parties, not content with the use of the word "are," implying the then present time, were careful to add the words "shall be," implying a future time, *without any limit.*   Again, it will be observed that the facts stated are admitted, not only on the trial but also "for the purpose of" this action; disclosing an intent that the facts stated are to be regarded as part and parcel of the action, without reference to when and how often it should be tried. But, in addition to this, the rule, as we understand it, does not require the party seeking to avail himself of the benefit of such a  formal stipulation in  writing, to  show  that it applies to a subsequent trial of the case; but, on  the contrary, the rule is, that the party seeking to limit its operation to the first trial must show that such was the true intent of the parties.    The burden of proof is upon the latter and not upon the former.    Now where is there anything in the paper itself which even indicates an intention to limit its operation to the first trial?    The only portion of the paper which it has been suggested tends to show a purpose to limit its operations, is that containing the following language: "And it is agreed that the original deed (referring to the deed from James C. Brown and wife, Elizabeth, to Pinckney Brown), if found by the time of the trial of this cause, shall be introduced in evidence; and if it cannot be found, that a certified copy thereof from the office of the said register of mesne

conveyance may be introduced in evidence." We are unable to conceive how this language indicates any intention to limit the operation of the agreement to the *first* trial. The only effect of the language quoted is to show that while the parties preferred to have the *original* deed offered in evidence, if it could be found, but if it could not be found, then a certified copy from the proper office might be offered in evidence. In addition to this, no fact has been brought to the attention of the Court, in such form as that it can be regarded as legal evidence, tending to show that the intention of the parties was to limit the operation of the agreement to the first trial, or to show any reason for such a limitation. It is too well settled to require any authority to support it, that this Court will not take cognizance of any fact which appears only in the argument of counsel; and, therefore, we cannot take notice of the fact stated in argument, and not appearing anywhere else in the record, that the purpose of the agreement was to try a question of law before the Court; and even if we could, we do not see how one party can be permitted to add additional terms to an agreement in writing, whereby a different effect is given it from that which its language shows it was intended to have. The rule is that an agreement in writing is to be construed by the language which the parties have used to express their intention, and so construing this paper, we are unable to find anything which indicates such an intent as that which the statements of counsel in their argument seek to attribute to it. It seems to us that the true rule in cases like the present is this: Where the parties enter into a formal agreement in writing, stipulating for the admission of certain specified facts, or waiving their right to a particular mode of trial, such agreement is binding upon the parties until the case is finally disposed of, unless such agreement is abrogated by the written consent of both parties, or one of the parties has been relieved from its operation by an order of the Court, based upon such a showing as satisfies the Court that the interests of justice require that he should be so relieved. In

this case the defendant has never obtained, or even asked for any such order, and, therefore, he must remain bound by his agreement.   Indeed, when he made his application before his Honor, Judge Ernest Gary, for leave to amend his answer, as hereinbefore stated, he seems to have conceded that he was then still bound by the agreement; for when Judge Gary refused his motion upon the ground that, *under the admitted statement of facts,* the proposed defense could not avail the defendant, and he appeals therefrom, he did not except upon the ground of error in considering the admitted statement of facts, but based his appeal upon other grounds. So far, therefore, as appears, the first time defendant ever claimed that he was no longer bound by the agreement, was when the case was called before Judge Aldrich, and then he made no application to be relieved from the operation, and made no showing necessary to entitle him to such relief. On the contrary, his claim was that, as a matter of legal right, he was no longer bound by the agreement, which, as we have seen, is untenable.

The judgment of the Court is, that the judgment of the Circuit Court be reversed, and that the case be remanded to that Court for a new trial.